UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANDRA MILLER ) | | |
|     Plaintiff, ) | No. 3:16-CV-02059 JBA | |
| ) | | |
| V. ) | | |
| ) | | |
| ALLSTATE INSURANCE COMPANY ) | | |
|     Defendant. ) | MARCH 10, 2017 | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

    NOW COMES the Plaintiff, SANDRA MILLER ("Plaintiff"), and submits the following Memorandum of Law in Opposition to the Defendant's, ALLSTATE INSURANCE COMPANY ("Defendant"), Motion to Dismiss.

**RELEVANT FACTS**

    Plaintiff filed a three count complaint in the Superior Court for the State of Connecticut against Defendant, ALLSTATE INSURANCE COMPANY regarding coverage issues for damage to concrete in her basement.  Count One alleges a claim for a breach of contract and states, in relevant part, that the Plaintiff's condition was caused by a chemical reaction which necessitates replacement of her basement walls (Count One, ¶ 7), pursuant to the policy coverage provided by the Defendant, losses due to chemical reaction are **not excluded** from coverage (Count One, ¶ 9), a structural engineer ordered the Plaintiff to vacate her home (Count One, ¶ 10), progressive deterioration of concrete caused by chemical reaction is covered under the collapse provision of the policy (Count One, ¶ 12), the policy further requires the

Defendant to pay living expenses (Count One, ¶ 13), Defendant denied coverage (Count One, ¶ 14), and, in its denial, Defendant relied on provisions contrary to the previously mentioned provisions (Count One, ¶ 15).

Count Two incorporates Count One and alleges a claim for Breach of Duty of Good Faith and Fair Dealing.  This Count states, in relevant part, Plaintiff expected to receive benefits under the contract she had with Defendant (Count Two, ¶18), and "[t]he Defendant in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a matter for the purpose of denying benefits despite the aforementioned provisions of the policy conferring benefits" (Count Two, ¶ 19).

Count Three incorporates Counts One and Two and alleges a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA").  This Count states, in relevant part, Defendant participates with the Insurance Services Office ("ISO") (Count Three, ¶ 22), has knowledge of numerous claims and lawsuits similar to that of the Plaintiff (Count Three, ¶ 24), based on information received from ISO, Defendant has denied these claims despite provisions that provide coverage for the chemical reaction and collapse (Count Three, ¶ 25), that Defendant provided false and misleading denial of coverage contrary to its policy in that no where does the policy exclude coverage for chemical reactions (Count Three, ¶ 26), has regularly denied similar claims (Count Three, ¶ 27), by failing to evaluate and effectuate a fair solution, it has conducted itself in a manner to disadvantage the Plaintiff (Count Three, ¶ 28), engaged in oppressive, immoral and

unscrupulous behavior (Count Three, ¶ 29); and, as a result, Plaintiff suffered losses (Count Three, ¶ 30).

**LAW AND ARGUMENT**

**1. Standard of Review**

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Dennis Roberge v. Amica Mutual Insurance Co., 3:15-cv-1262 (WWE) (December 29, 2015) quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) ("Roberge"). "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face." Raymond Gabriel v. Liberty Mutual Fire Insurance Company, 3:14-cv-1435 (VAB) (September 28, 2015) ("Gabriel") quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Ashcroft"). Rules of Civil Procedure require the Plaintiff only to plead "'...a short and plain statement of the claim showing that the pleader is entitled to relief.' in order to 'give the defendant fair notice of what the... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 555 (2007) ("Twombley"). "Although 'detailed factual allegations' are not required, a complaint must offer more than 'labels and conclusions,' or 'a formulistic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement.'" Gabriel, supra, citing Twombley, supra, at 557. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, supra, at 678.

**2.  Plaintiff has Stated a Sufficient Cause of Action under the Policy due to Its Failure to Exclude Losses from a Chemical Reaction**

The Plaintiff is seeking coverage for a chemical reaction that occurred on her property, while the cracking is just a further manifestation of a "sudden and accidental physical loss" that has already occurred.  The Defendant duly notes "[t]he Allstate Policy only covers 'sudden and accidental direct physical loss' to covered property." Defendant's Memorandum of Law, p. 6.  The Defendant appears to be referring to the portion of its policy which states, in relevant part, "[w]e will cover sudden and accidental direct physical loss to property described in Dwelling Protection – Coverage A and Other Structures Protection – Coverage B excepts as limited or excluded in this policy."  Defendant's Exhibit C, Document 16-4, p. 37 of 70.  The policy then proceeds to list about two to three pages of exceptions.  Id, at p. 37-39 of 70.  None of these exclusions list losses due to a chemical reaction.  See Plaintiff's Complaint, Count One, ¶ 9.

The Plaintiff alleges that the chemical reaction is the "sudden and accidental direct physical loss".  See Plaintiff's Complaint, Count One, ¶¶ 7 and 9.  The Defendant in its Motion attached a copy of a report prepared by its expert.  Within this report, the expert noted that the cause of the deterioration is pyrrhotite, a reactive material when

exposed to air and water that expands resulting in cracking.  See Defendant's Exhibit D, Document 16-5, p. 6 of 36.  On or about November 16, 2015, the Plaintiff hired an engineer who echoed the Defendant's expert's analysis.  See Plaintiff's Complaint, Count One, ¶ 7.   When certain elements mix, the chemical reaction occurs.  In this case, the instant the water and the air combine with the aggregate, the materials change.  This change can cause cracking.

      This chemical reaction requires that the concrete be replaced.  Id.  Plaintiffs' Complaint, ¶ 7.  The chemical reaction, obviously, cannot be seen by observation, but is expansive nature and becomes noticeable by the cracking.  See Defendant's Exhibit D, Document 16-5, p. 6 of 36 .  The cracking as well as the "collapse" aspect of the Plaintiff's Complaint are an ostentatious manifestation of this chemical reaction.  The degree of this manifestation, whether the reaction is occurring and is not visible, or if the concrete has crumbled resulting in the entire structure imploding, really has nothing to do with the physical loss that is already occurring.  The cracking and the "collapse" are a further result of the chemical reaction.

      Finally, due to the condition, the Plaintiff was forced to leave her home.  See Plaintiff's Complaint, Count One, ¶ 10.  The Defendant attached a report provided to the Plaintiff by a licensed engineer which noted several loud noises in a twelve hour period.  This engineer noted that there were signs of increased damage to the property and that he did not believe that the structure was safe to inhabit.  See Defendant's Exhibit D, Document 16-5, p. 21-22 of 36.  The same engineer had visited the property on November 16, 2015, and, when he revisited the premises on January 6, 2016,

based on the occurrences at the Plaintiff's property, ordered her to leave.  See Plaintiff's Complaint, ¶7 and ¶10.  The Plaintiff argues that this should be considered a "sudden and accidental" event.

The Plaintiff maintains that these allegations within the Complaint are more than sufficient to meet the standards set out in Roberge, Gabriel, and Twombley allowing this cause of action to proceed.

### 3. Plaintiff's "Cracking" Walls Do Not Preclude Recovery for the Chemical Reaction

Defendant argues that the Plaintiff's claim for cracking walls is clearly excluded by the Policy.  As previously stated, the cracking is the manifestation of the chemical reaction that has already occurred, which is not listed in the exclusions.  Whether the walls crack, bow, fall down, or mysteriously disappear into thin air, these still do not mean a physical loss did not occur due to a chemical reaction that happened within.

From another perspective, suppose a car crashed into the home or a fire gutted the home causing the concrete to crack.  Under the Defendant's argument, this damage would simply not be covered.  In fact, neither would any damage to the walls, floors, roofs or ceilings of the home due to the car crash or fire.  See Defendant's Exhibit "C", Document 16-4, p. 37 of 70.  The term "physical loss", since it is not defined within the policy, would arguably be just about anything **except** the listed exceptions.  This cracking exception within the policy would cover little to no "physical

loss" to property.  The Plaintiff, however, takes a less pessimistic view of the coverage provided by the Defendant and maintains that this exception is in place in order to prevent the homeowner from seeking compensation for every day occurrences and NOT the catastrophic event found in this case concerning the chemical reaction.

Finally, the cases cited by the Defendant are distinct in that <u>Rapid Park</u> dealt with water seepage, while <u>Boston Co.</u>, <u>Rhoden</u>, and <u>Nidia</u> dealt with the surrounding soils.  <u>See</u> Defendant's Memorandum, p. 7.

### 4. **Defendant's Allstate Arguments Concerning Defective Materials is Misplaced**

Defendant argues that the Plaintiff is claiming defective construction materials as a basis for the Plaintiffs' case.  <u>See</u> Plaintiffs' Complaint, Count One, ¶ 10.  In Paragraph 10, the Plaintiff merely summarized the collapse coverage language contained in the Defendant policy.  <u>See</u> Defendant's Exhibit "C", Document 16-4, p. 46 of 70.  The argument contained in this portion of the Defendant's memorandum, in arguendo, simply points out inconsistency within its own policy.  The Plaintiff is not specifically claiming a construction defect per se, but the collapse provision within the policy apparently allows for coverage if a construction defect causes a collapse.

### 5. **Plaintiff has a Viable Claim for Collapse**

The Plaintiff is seeking coverage for damages caused by a chemical reaction that occurred on her property under the collapse provision. The cracking is a

manifestation of that chemical reaction and a physical loss that has already occurred (and continues to occur) after the pyrrhotite in the concrete is exposed to water and air. The Plaintiff only discovered this chemical reaction after an inspection of her home in 2015.  Compare Parker v. Worcester Insurance Company, 247 F.3d 1, 5 (1st Cir. 2001) (policy date of claim did not run until time when plaintiff knew of the condition).  It was at this time the Plaintiff was fully apprised of the seriousness of the condition to her home.

The Plaintiff further argues that one of the after effects of the ongoing chemical reaction to the home is that it is collapsing and is no longer safe to live in.  In this case, the Plaintiff argues that the walls are cracking, have given way and essentially caving in to the point that an expert does not consider them safe, and as such, the damages and losses should be covered under the Defendant's policy.  See Malbco Holding, LLC v. Amco Ins. Co., 629 F. Supp. 2D 1185, 1195 (D. Or. 2009) (definition of collapse only defines term, while the remaining portions clarify instances when collapse has not occurred).  The term collapse is ambiguous in light of the qualifiers made by the provisions in the policy.  Compare Dalton v. Harleysville Worcester Mutual, 557 F. 3d, 88, 93 (2nd Cir 2009) (policy found to be ambiguous because it covers "collapse" due to hidden decay, which is a slow occurring condition).  Any ambiguities in an insurance contract are construed in favor of the insured.  See Lexington Ins. Co. v. Lexington Healthcare Group, Inc., 309 Conn. 1, 9-10 (2013).

The Plaintiff argues that the structural integrity of the building certainly is in a state of collapse and the Plaintiff can no longer live there, thus coverage is warranted.

<u>130 Slade Condo Association Inc. v. Millers Capital Insurance Company</u>, Civil Action No. CCB-07-177(D. Md. 2008) (Court found any serious impairment of the structural integrity of the building is covered, in this case, the structure had buckled three inches).  As such, since the structural integrity of the home is clearly in jeopardy, the collapse provision provides coverage to the Plaintiff.

**6.       <u>Living Expenses Should be Covered if Insurance Coverage is Warranted</u>**

Defendant argues that since coverage is not warranted, nor should be living expenses per the language of the contract.  Plaintiff argues that if there is coverage, then these expenses should be covered.  The Defendant notes that no public official or other similar entity ordered the Plaintiff to leave, just a structural engineer.  Plaintiff maintains that this is an issue of fact for the fact finder and should not be subject to a motion to dismiss at this time.

**7. <u>Plaintiff has Stated a Sufficient Cause of Action for a Breach of Good Faith and Fair Dealing</u>**

The Plaintiff has stated a sufficient claim under Count Two for a Breach of Good Faith and Fair Dealing:

> "It is axiomatic that the duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship... In other words, every contract carries and implied duty requiring that neither party do anything that that will injure the right of the other to receive benefits of the agreement... The covenant of good faith and fair dealing presupposes that the terms and purpose of the

> contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contact term... To constitute a breach of the implied covenant of good faith and fair dealing, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive benefits that he or she reasonably expected to receive under the contact must have been taken in bad faith."

Kowalchuk v. Travelers, No. CV 11 6012608 (Conn. Super. Ct., June 4, 2014) (Shortall, JTR) ("Kowalchuk") quoting Renaissance Management Co. v. Connecticut Housing Finance Authority, 281 Conn. 227, 240) (2007).  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive... Bad faith means more than mere negligence, it involves a dishonest purpose." Gabriel, supra, quoting Warner v. Konover, 553 A.2d 1138, 1140 (Conn. 1989).

    Plaintiff has alleged that there existed coverage for the chemical reaction that occurred in the concrete.  See Plaintiff's Complaint, Count Two, ¶¶ 7-10.  Further, Plaintiff has alleged that despite this coverage, Defendant denied the claim and relied on interpretations of provisions contrary to the coverage provisions.  See Plaintiff's Complaint, Count Two, ¶¶ 11-15.  Finally, Plaintiff has alleged that she expected to receive benefits, yet Defendant, unreasonably and in bad faith, sought out other policy provisions and interpreted them in a manner for the purpose of denying benefits when provisions existed conferring benefits.  See Plaintiff's Complaint, Count Two, ¶¶ 18-19.  Plaintiff, therefore, has alleged a sufficient claim under Count Two.  Compare Gabriel, supra, ("Read in a light most favorable to the Gabriels, these allegations state a claim

for breach of implied covenant of good faith and fair dealing because they give rise to a plausible inference that Liberty Mutual acted to mislead the Gabriels, or neglected to fulfill a duty to provide coverage out of a self-interested motive").

The Plaintiff argues that there exists coverage under the policy, specifically that chemical reactions are NOT excluded from coverage.  Defendant, in bad faith, and for the sole purpose of not providing coverage, purposely ignored applicable provisions for coverage (or, as in the case of the chemical reaction, something NOT specifically excluded) while it delved into a lengthy, confusing, and cumbersome policy to search out any excuse NOT to cover the Plaintiff.  Certainly, when a homeowner experiences a natural disaster, such as a chemical reaction occurring in his or her basement, a homeowner expects that the insurance company he or she faithfully paid premiums to would employ provisions within the policy to find coverage, not go out of its way to exclude coverage.

Therefore, as stated, Count Two of Plaintiff's Complaint should NOT be subject to a Motion to Dismiss.

**8. Plaintiff has Stated a Sufficient Claim Under CUIPA and CUTPA.**

The Plaintiff has stated a sufficient claim under CUIPA and CUTPA in Count Three.

> "A plaintiff may assert a CUTPA claim based on a violation of CUIPA... To prevail on such a claim, the plaintiff must show that the defendant engaged in an act prohibited by CUIPA and the act proximately caused the plaintiff's harm... 'A

> Claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice... The plaintiff must show more than a single act of insurance misconduct...'"

Gabriel, supra, citations omitted.

> "Connecticut courts, when determining whether a practice violates CUPTA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statues, the common law, or otherwise--- whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers..."

Kowalchuk, supra, quoting Ancona v. Manafort Bros., Inc., 56 Conn. App. 701, 714 (2000).  "All three criteria do not need to be satisfied to support a finding of a violation of CUTPA."  Id, quoting Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 367-368 (1999).  "CUPTA is remedial in character... and must be liberally construed in favor of those whom the legislature intended to benefit."  Id, quoting Service Road Corp. v. Quinn, 241 Conn. 630, 637 (1997).

Plaintiff's claim concerning the Defendant's association with ISO have been the subject of other Complaints where similar Motions to Dismiss have been denied.  See Danny Panciera v. Kemper Independence Insurance Company, 3:13-cv-1009 (Arterton, J.) (April 29, 2014) ("...Plaintiffs have alleged the existence of an organization in which Defendant is a participant whose main function is to harmonize policy language, interpretation and application.  Based on Defendant's participation in that organization, and based on the conduct of other ISO participants in denying similar claims, Plaintiffs

plausibly allege that Defendant followed an industry-wide practice in denying their claim and that additional similar claims from the geographic area served by the J.J. Mottes Company likely had been submitted to and denied by Defendant consistent with this practice"). See also Gabriel, supra ("…the Gabriels alleges that Liberty Mutual and related entities have denied coverage in at least four other cases involving similar facts and identical policy language"). See also Liston-Smith v. CSAA Fire & Casualty Insurance Company, 3:16-cv-00510 (JCH) (denied Motion to Dismiss with similar allegations).

Defendant Allstate in this case is aware of at least three other matters besides this one where it is subject to similar complaints with similar allegations. See Lajeunesse v. Allstate Insurance Company, 3:16-cv-00937 (AVC); Adams v. Allstate Insurance Company, 3:16 cv 01360 (JBA); Manseau v. Allstate Insurance Company, 3:16 cv 01231 (MPS). Further, the Defendant is more than likely aware of a class action concerning claims versus multiple insurers concerning concrete in Eastern Connecticut entitled Halloran, et al. v. Harleysville Preferred Insurance Co., 3:16-cv-133 (VAB). This is more than sufficient to show consistent unfair conduct by Defendant in this case. Compare Kowalchuk, supra ("The court finds Mr. Kowalchuk's CUTPA claim is legally sufficient because he has alleged unfair misconduct by Travelers against multiple insureds"). Plaintiff has alleged in Paragraph 27 of Count Three the existence of these multiple claims and, as such, has sufficiently alleged a cause of action under CUIPA and CUTPA.

**Conclusion**

For all of the above mentioned reasons, Plaintiffs respectfully object to Defendant's Motion to Dismiss dated February 10, 2017.

                **PLAINTIFF**

                **SANDRA MILLER**

By /s/ Brian D. Danforth

    **Brian D. Danforth (ct19476)**

    **Tolisano & Danforth, LLC**

    **P.O. Box 676**

    **Ellington, CT 06029**

    **(860) 871-2422**

    **(860) 871-2828 (fax)**

    bdanforth@tanddlaw.com

**CERTIFICATION**

This is to certify that on March 10, 2017 a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to the Defendant's Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be send by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Raymond T. DeMeo, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103
Telephone: (860) 275-8200
Facsimile: (860) 275-8299
E-mail: rdemeo@rc.com

           /s/ Brian D. Danforth

           **Brian D. Danforth**