UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA MILLER | : |
| | : |
| | : |
| Plaintiff, | : Case 3:16-cv-02059 (JBA) |
| | : |
| v. | : |
| | : |
| ALLSTATE INSURANCE COMPANY | : |
| | : MARCH 24, 2017 |
| Defendant. | : |

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Plaintiff's characterization of her claimed loss as a "chemical reaction that occurred on [the] property" does not bring the loss within the Policy's coverage. (ECF 20, Pl. Opp. Mem., p. 4-6). Likewise, her argument that she "has a [v]iable [c]laim for [c]ollapse," (*Id.* at p. 7) does not withstand scrutiny. She fails to address the policy language regarding "collapse," in particular the requirement that collapse be "sudden," which means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536, 791 A. 2d 489 (2002). Judge Underhill, in *Alexander v. Gen. Ins. Co. of Am.*, 2017 WL 188134 (D. Conn. Jan. 17, 2017),[1] equated an "abrupt" collapse with sudden and catastrophic failure. The Connecticut Superior Court did the same recently in granting summary judgment to an insurer in the concrete deterioration case of *Jemiola v. Hartford Casualty Ins. Co.*, CV-15-6008837-S (J.D. Tolland 3/2/2017), Exh. A at 22.[2] And Judge Bryant, in *Metsack v. Liberty Mutual Fire Insurance Co.*, 3:14-cv-01150-VLB,[3] recently held that as a matter of law the plaintiffs' claimed loss, which, as

---

[1] Copies of the transcript of Judge Underhill's oral ruing on the motion to dismiss in *Alexander* is attached as Exhibit A (ECF 16-2) to Allstate's memorandum in support of its motion to dismiss.
[2] A copy of the decision in *Jemiola v. Hartford Casualty Ins. Co.*, CV-15-6008837-S (J.D. Tolland 3/2/2017) is attached hereto as Exhibit A.
[3] A copy of the decision and order granting the motion for summary judgment in *Metsack v. Liberty Mutual Fire Insurance Co.* is attached hereto as Exhibit B.

here, consisted of progressive deterioration of the plaintiffs' basement walls over time, did not occur "suddenly," and thus was not a covered collapse under the same Allstate policy at issue in this case. *Id.*, Exh. B at 18. Plaintiff's claimed "chemical reaction" is simply another way of describing the process of deterioration—oxidation of pyrrhotite, a mineral within the concrete aggregate that is causing the concrete to crack—which is not a "sudden and accidental" loss, but, as Plaintiff alleges in her complaint, is part of the "progressive deterioration of the concrete." (ECF 1, Compl., ¶¶ 7, 12).

Plaintiffs' alleged damage also does not constitute a "collapse" within the Policy's grant of coverage, which only covers an "entire collapse" of a structure or a portion thereof that is "sudden and accidental." (ECF 16-1, Def. Mem., pp. 9-15; ECF 16-4, Exh. C, pp. 38, 46). Plaintiff's claim falls under policy exclusions for losses consisting of or caused by (1) settling, cracking, shrinking, or bulging and (2) defective materials used in construction. (ECF 16-4, Exh. C, pp. 38-39). Finally, even if the claimed "chemical" component of the deteriorative process were incorrectly considered in isolation, the loss would not be covered due to exclusions for losses consisting of or caused by rusting, corrosion and contamination. (*Id.*).

### A. Plaintiff's "Chemical Reaction" Argument Notwithstanding, Her Claimed Loss is Not Within the Scope of Policy Coverage.

Plaintiff's "chemical reaction" argument at pages 4-7 of her brief attempts to characterize her deterioration and cracking loss by a different name and claim that because that different name is not specifically referenced as a policy exclusion, it must be covered. Plaintiff's argument is akin to arguing that wood was not damaged by rot but by the "chemical reaction" of enzymes from bacteria and fungi, or that a burned house was damaged by the "chemical reaction" of fuel, combustion and oxygen rather than fire. Like the reactive pyrrhotite in this case, if untreated steel is left exposed to air and water, it will undergo a "chemical reaction" through oxidation,

more commonly known as rust. That does not mean a rusted bolt is a "chemical reaction" loss. Taken to its logical end, Plaintiff's argument would eviscerate many policy exclusions because many natural processes, such as combustion and rust, are indeed "chemical reactions."

### i. The Cracking and Deterioration of Plaintiff's Concrete was not a Sudden and Accidental Direct Physical Loss to Property and is Not Covered Under the Policy.

Even if one were to erroneously conclude that calling the long-term deterioration and cracking of Plaintiff's concrete a "chemical reaction" somehow obviates the relevant Policy exclusions, the loss would still not fall under the Policy's grant of coverage, which is limited to "**sudden** and accidental direct physical loss" to covered property. (ECF 16-4, Exh. C, p. 37) (emphasis added). Plaintiff's Complaint characterizes her loss as one that occurred "[o]ver time." (ECF 1, ¶ 5). As Allstate stated in its main brief, the Connecticut Supreme Court has held that the term "sudden," in the context of an insurance policy, means "temporally abrupt," and that "a process that occurs slowly and incrementally over a relatively long time, no matter how unexpected or unintended the process," cannot be considered "sudden." *Buell,* 259 Conn. at 544; Def. Mem., ECF 16-1, p. 11. By Plaintiff's admission, the damage to her home was the result of "progressive[] deteriorat[ion]"—a position supported by engineers retained by both parties. (ECF 1, Compl., ¶ 7; ECF 20, Pl. Mem., pp. 1, 5; ECF 16-5, Def. Mem., Exh. D, pp. 9-12). As Judge Bryant held in *Metsack,* there is nothing "sudden" or abrupt about a process of deterioration that has occurred slowly and incrementally since the first pouring of the concrete. *Metsack v. Liberty Mutual Fire Insurance Company,* 3:14-cv-01150-VLB (Exh. B, p. 18).

Plaintiff's claim that a structural engineer ordered her to vacate her home does not bring her loss within the Policy's coverage. (ECF 20, pp. 5-6). Plaintiff appears to argue that an engineer's recommendation that she leave her property is a "sudden and accidental" event. (*Id.*

3

at p. 6). Plaintiff's argument overlooks that the Policy's coverage grant requires that the "sudden and accidental" event be "direct *physical* loss."[4] (ECF 16-4, Exh. C, p. 37) (emphasis added). An engineer's recommendation, or even "loud noises" as newly claimed in Plaintiff's opposition brief, do not constitute "physical loss" within the meaning of the Policy. Moreover, non-specific "increased damage" noted by an engineer over time cannot be construed as "sudden," given the meaning ascribed to that term by the courts in *Alexander*, *Metsack*, and *Jemiola*.

### ii. Plaintiff's Alleged Loss is Cracking in Concrete Caused by Defective Materials, Which is Not Covered Under the Policy.

Plaintiff states in her Complaint that her loss consists of "visible cracking patterns in the basement walls" caused by "defective materials." (ECF 1, Compl., ¶¶ 6, 12). The Policy excludes losses either "consisting of" or "caused by" cracking of walls and defective materials. (ECF 16-4, Exh. C, p. 38). Nevertheless, Plaintiff now states in her opposition that she is "seeking coverage for a chemical reaction that occurred on her property, while the cracking is just a further manifestation of a 'sudden and accidental physical loss' that has already occurred," and asserts that she is "not specifically claiming a construction defect per se." (ECF 20, Pl. Mem., pp. 4,7). This convoluted argument is not supported by the allegations of the Complaint—the claimed loss consists of cracking and/or is caused by cracking, but either way it is not covered. Further, whether Plaintiff chooses to characterize her loss as a "construction defect" is immaterial—her Complaint cites "defective materials" as a cause of loss. (ECF 1, Compl., ¶ 12). Again, these are excluded causes of loss under the plain language of the Policy.[5]

---

[4]The Policy's Additional Coverage for collapse similarly states that the "collapse . . . must be a sudden and accidental direct physical loss" in order for coverage to apply. Whether Plaintiff is claiming noises heard at the Property, "signs of increased damage," or an engineer ordering her to vacate the property, none of these instances constitute "sudden and accidental direct physical loss." Accordingly, there is no coverage under the Additional Coverage, as discussed further in Section B.
[5] Plaintiff attempts to discredit Allstate's reliance on the exclusion for "settling, cracking, shrinking, bulging, or expansion of. . .walls" by positing a scenario where a clearly sudden and accidental loss, such as a car crashing into the home or a fire gutting it, causing concrete to crack, would be subject to this exclusion. (ECF 20, p.

4

As Allstate stated in its letter informing Plaintiff of the denial of her claim, analysis of the concrete core samples from Plaintiff's Property revealed the presence of pyrrhotite, a reactive mineral that expands when exposed to water and air. (ECF 16-5, Exh. D, p. 4). Allstate further stated that "**[t]he pyrrhotite has been present since the concrete was originally poured**." (*Id.*) (emphasis added). Neither Plaintiff nor her engineer disputes that the concrete cracking resulted from the composition of the original concrete mix. (ECF 1, Compl., ¶ 7; ECF 20, Pl. Mem., p. 5). The Policy excludes coverage for "loss consisting of or caused by . . . faulty, inadequate, or defective . . . materials used in . . . construction . . . of property." (ECF 16-4, Exh. C, pp. 38-39). Accordingly, it is undisputed that the "chemical reaction" at issue consisted of, or was caused by, defective or inadequate materials used in the construction of the foundation, and therefore the loss is not covered under the Policy. (ECF 16-1, Def. Mem., pp. 8-9).

Plaintiff similarly claims that "[w]hether the walls crack, bow, fall down, or mysteriously disappear into thin air, th[is] do[es] not mean a physical loss did not occur due to a chemical reaction that happened within." (ECF 20, Pl. Mem., pp. 6-7). This argument ignores the fact that chemical reactions are an everyday part of the natural world. They are not, in and of themselves, a loss. The loss here is obvious and undisputed—foundation walls that have cracked over time. The Policy prefaces all of the excluded losses under the policy with the statement that Allstate does not cover loss "consisting of or caused by" the enumerated perils. (ECF 16-4, Exh. C, p. 38-39). This includes the provision that the Policy does "not cover loss consisting of or caused by . . . cracking [or] bulging . . . of foundations [or] walls . . . ." (*Id.*). A loss *consisting of* cracking or bowing to a foundation wall, like Plaintiff's loss here, is clearly excluded under the Policy. (*Id.*).

---

6). This is a flawed analogy, because in those scenarios, the cracking is the result of a sudden physical loss (fire or vehicle collision), not the cause of a loss that is occurring gradually over many years.

### iii. Loss Caused by Chemicals, Rust, or Other Corrosion is Not Covered.

As Allstate stated in its denial letter, the condition that it identified in Plaintiff's concrete walls – the oxidation and expansion of reactive pyrrhotite in the concrete aggregate – is excluded under the Policy. The Policy provides, in *Losses We Do Not Cover Under Coverages A and B*:

> *We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B — Other Structures Protection consisting of or caused by:*
> 15.                              * * *
>
>     d)    <u>**rust or other corrosion**</u>*, mold, wet or dry rot;*
>
>     e)    *contamination, including, but not limited to the presence of toxic, noxious or hazardous gasses,* **chemicals***, liquids, solids or other substances at the residence premises or in the air, land or water serving the residence premises;*
>                                           * * *

(ECF 16-4, Exh. C, p. 38). (emphasis added).

Plaintiff seeks coverage for cracking in her foundation that she claims was "caused by a chemical reaction in the concrete." (ECF 1, Compl., ¶ 7). Allstate's denial of the claim, based on an engineering report including scientific analysis and concrete samples taken from the foundation, is that the loss is caused by a mineral called pyrrhotite in the concrete aggregate. Allstate stated, referencing the engineering report attached to the denial letter, that "[w]hen exposed to water and air, including ground water, the pyrrhotite expands, causing the concrete to develop cracks that gradually grow larger and more extensive." (ECF 16-5, Exh. D, p. 4). The engineering report attached to the denial letter further explains that when reactive pyrrhotite is exposed to water and air it "oxidizes and expands," which causes cracking. (ECF 16-5, Exh. D, p. 6). Thus, the "chemical reaction" in the concrete—the oxidation, or rusting, of pyrrhotite— falls within the exclusion for losses caused by or consisting of "rust or other corrosion." (ECF 16-4, Exh. C, p. 38). Indeed, this very exclusion elucidates the fundamental error in Plaintiff's

6

central argument. Rusting *is* a chemical reaction that occurs when iron combines with water and oxygen to form iron oxide. It is one of many chemical reactions that occur every day in the natural world. Plaintiff asks the Court to find that a loss caused by rusting, an excluded cause of loss, is nevertheless covered simply because she characterizes it as a "chemical reaction."

### B. The Additional Coverage for "Collapse" Does Not Apply to Plaintiff's Claim.

Plaintiff, despite her failure to address the Policy language at issue, nevertheless asserts that she has a "[v]iable [c]laim for [c]ollapse." (ECF 20, pp. 7-9). The Allstate Policy only covers an "entire collapse" of a building or part of a building that is "sudden and accidental." (ECF 16-4, Exh. C, p. 46). Plaintiff herself characterizes her loss as "progressive deterioration" of her basement walls, which, under *Buell*, 259 Conn. at 544; *Metsack, supra*, Exh. B, p. 18; and *Jemiola, supra*, Exh. A, p. 22, is not a "sudden" loss.[6]

In *Metsack*, Judge Bryant, considering the same Allstate policy language at issue in this case under nearly identical factual circumstances, concluded that the Allstate policy's requirement of "sudden and accidental direct physical loss" meant that there was no coverage for "collapse" where it was undisputed that the plaintiff's foundation walls "deteriorated over time." (Exh. B, p. 18). Here, as in *Metsack*, Plaintiff alleges that her foundation walls are "progressively deteriorat[ing]." (ECF 1, ¶¶ 7, 12). Moreover, like the policy at issue in *Alexander*, 2017 WL 188134, the Allstate Policy provides that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF 16-4, Exh. C, p. 46). Plaintiff here alleges damages that are specifically excluded from the Policy's limited coverage for collapse, namely "visible cracking patterns." (ECF 1, Compl., ¶ 6). As the court in *Alexander* recognized, a collapse must be "something other than a bulging . . . cracking, or expansion" (ECF 16-2, p.

---

[6] Plaintiff's citation to *Parker v. Worcester Insurance Co.*, 247 F.3d 1, 5 (1st Circ. 2001) (ECF 20, Pl. Mem., p. 8) is inapposite, as *Parker* dealt with the issue of when a loss takes place for purpose of applying a policy's suit limitations clause, which is not at issue in this motion.

14) and, under such policy language, "it is clear that no collapse has occurred" where the "only allegations of impairment to the structural integrity of the walls are allegations that the walls are 'cracking' or . . . 'bulging.'" (*See Alexander*, 2017 WL 188134, at *6).

The *Metsack* court expressly rejected the plaintiffs' reliance on *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88 (2d Cir. 2009), which this Plaintiff also cites, noting that "the policy language at issue in *Dalton* did not qualify "collapse" with "sudden."[7] (Exh. B, at 18). The *Dalton* court, interpreting New York law, held that where a policy *did not* specify an "entire" or "sudden" requirement or otherwise define "collapse," a collapse caused by hidden decay or insect damage did not require a "sudden destructive force." (*Id.* at 93). The Second Circuit further noted that a case involving a policy that *was* construed to require a "sudden impact" *would be distinguishable*. (*Id.* at 92, n1). Thus, *Dalton* is inapplicable here, as the Policy requires an "entire collapse" that is "sudden."[8]

### C. Because Count One Should be Dismissed, Counts Two and Three Should Be Dismissed As Well.

Plaintiff does not dispute that if there is no coverage under the Policy, there can be no liability for bad faith or a CUTPA/CUIPA violation. (*See* cases cited in Def. Mem., ECF 16-1,

---

[7] *Malbco Holdings, LLC v. Amco Ins. Co.*, 629 F. Supp. 2d 1185 (D. Or. 2009), cited by Plaintiff, is also distinguishable. In *Malbco*, the policy defined collapse as "an **abrupt** falling down or caving in of a building," and the court recognized that "abrupt has a plain meaning, namely **sudden**." (*Id.* at 1193-95) (emphasis added; internal quotation marks omitted). Accordingly, the court reasoned that the first issue in determining whether a collapse occurred under the policy was "whether an **abrupt event** caused part of the [building] to fall or cave in, such that part of it could not be occupied for its intended purpose." (*Id.* at 1197) (emphasis added). The experts in that case differed as to whether the event, the snapping of floor trusses that caused a hotel floor to fall three inches, occurred suddenly and abruptly. (*Id.* at 1198). Here, Plaintiff's claimed loss is "progressive deterioration of the concrete" in her home's basement walls, not a "sudden" or "abrupt" event. (ECF 1, ¶ 12).

[8] Plaintiff also suggests that "the structural integrity of the building certainly is in a state of collapse" and cites to *130 Slade Condo Association, Inc. v. Millers Capital Insurance Co.*, 2008 WL 2331048 (D. Md. June 2, 2008). (ECF 20, p. 8). In *Slade*, the policy provided that collapse must consist of "an **abrupt** falling down or caving in of a building or any part of a building" in order for the additional coverage for collapse to apply, which the court interpreted as requiring "an **actual, abrupt, and major event**" that renders the building structure unusable." (*Id.*, at *2, 4) (emphasis added). Applying this definition, the court concluded that the building had "caved in" and "suffer[ed] a serious impairment to its structural integrity" because it "buckle[d] three inches down and three inches to the south **during an abrupt event**, which render[ed] the building unsafe and subject to evacuation." (*Id.*, at *5-6) (emphasis added). Here, Plaintiff's alleged damage consists of the gradual deterioration to the foundation wall, *not* a sudden or abrupt event.

8

pp. 17-18; *see also Metsack,* Exh. B at 18-19; *Jemiola,* Exh. A at 24).[9] Therefore, only if the Court does not grant Allstate's motion to dismiss Count One of the Complaint is it necessary to consider the allegations of Counts Two and Three.

As to bad faith, the Connecticut federal court recently dismissed a similar bad faith claim in a concrete deterioration case.[10] In *Carney v. Allstate Insurance Company*, 3:16-cv-00592-VLB, at 6,[11] Judge Bryant concluded that allegations similar to those presented here amounted to nothing more than a "legitimate dispute" over the interpretation of the policy's "collapse" provision, which is identical to the policy in the present case. Because the policy only covered "sudden and accidental" loss, and because "the impairment to the property is caused by a gradual chemical reaction and the property retains its structural integrity," the Court could not "conclude that [Allstate's] interpretation of the policy provisions is unreasonable." (*Id.* at 7). The court also held that the plaintiff "cannot establish bad faith solely by alleging [Allstate] impeded upon her right to coverage under the policy." (*Id.*). As stated in Allstate's main brief, Plaintiff cannot establish bad faith solely by alleging that Allstate denied policy benefits. (ECF 1, ¶ 20; ECF 16-1, at p. 19). Moreover, as noted in Allstate's main brief at pages 18-19, an insured cannot recover for bad faith if the insurer denies a claim that is "fairly debatable," and the insurer has some arguably justifiable reason for denying the claim. (*McCulloch v. Hartford Life & Acc. Ins. Co.*,

---

[9] Nor does Plaintiff dispute that if there is no coverage for Plaintiff's claimed loss, Plaintiff is not entitled to reimbursement for additional living expenses. (*See* ECF 20, Pl. Mem., p. 9).

[10] Plaintiff relies on *Gabriel v. Liberty Mutual Fire Ins. Co.*, 3:14-CV-01436, 2015 WL5684063 (D. Conn. Sept. 28, 2015) to support her position that some kind of bad faith "plausible inference" can be drawn from her Complaint. (ECF 20, Pl. Mem., pp. 10-11). Unlike the plaintiffs in *Gabriel*, however, Plaintiff here has not alleged that Allstate "ignored state and federal case law" when interpreting policy terms, or that Allstate "intentionally cited inapplicable policy language to mislead the [Plaintiff] into thinking that [his] claim was not covered in order to preserve [Allstate's] assets." *Gabriel*, 2015 WL 5684063 at *5. Instead, Plaintiff's only "bad faith" allegation is that Allstate, "in its discretion, unreasonably and in bad faith, sought out other policy provisions and interpreted these and other policy provisions in a manner for the purpose of denying benefits despite the aforementioned provision of the policy conferring benefits." (ECF 1, Compl., ¶ 19).

[11] A copy of the decision granting to dismiss in *Carney v. Allstate Insurance Company*, 3:16-cv-00592-VLB is attached hereto as Exhibit C.

9

363 F. Supp. 2d 169, 177 (D. Conn. 2005)). At a minimum, the coverage issues here are "fairly debatable," precluding liability for bad faith.

As with bad faith, there can be no liability under Conn. Gen Stat. § 38a-816(6) where the insurer's coverage position was, as here, reasonable and fairly debatable.[12] (*See* cases cited in Def's. Memo, ECF 16-1, at p. 23). Moreover, the *Carney* Court rejected certain allegations present in this Plaintiff's CUTPA claim,[13] in particular the claims based on alleged participation in the Insurance Services Office ("ISO"). (Exh. C, at pp. 7-8; ECF 1, Compl., ¶¶ 22-25). Addressing allegations regarding participation in ISO in the context of the *Carney* plaintiff's bad faith claim, the Court held that the plaintiff had failed to "provide any facts that suggest [Allstate] wrongfully acted upon its knowledge to improperly interpret the homeowner policy at issue." (*Id.* at 8). The court concluded that "mere participation in the ISO without more is insufficient to raise an inference of bad faith." (*Id.*). This Court should reach the same conclusion and dismiss Count III.

### III. CONCLUSION

For the foregoing reasons, and for the reasons stated in Allstate's memorandum in support of its motion to dismiss, Plaintiff has failed to state a claim upon which relief can be granted, and Counts One, Two, and Three should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

DEFENDANT
ALLSTATE INSURANCE COMPANY

---

[12] Plaintiff asserts that her ISO allegations were "the subject of other Complaints where similar Motions to Dismiss have been denied" and cites to *Panciera v. Kemper Independence Ins. Co.*, 3:13-CV-1009, 2014 WL 1690387 (D. Conn. April 29, 2014) and *Gabriel*, supra, 2015 WL 5684063. These cases do not involve consideration, as here, of the insurer's specific reasons for denial of the claim at issue.

[13] While the *Carney* decision involves a bad faith count, it addresses allegations substantially similar to those pled in Plaintiff's CUTPA/CUIPA count.

/s/ *Raymond T. DeMeo*
Raymond T. DeMeo (ct02189)
Jenna L. Veronneau (ct30076)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Fax:  (860) 275-8299
rdemeo@rc.com
jveronneau@rc.com
Attorneys for Allstate Insurance Company

## **CERTIFICATION**

I hereby certify that on March 24, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

*/s/ Raymond T. DeMeo*
Raymond T. DeMeo