UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SANDRA MILLER,<br>    *Plaintiff*,<br>v.<br>ALLSTATE INSURANCE COMPANY,<br>    *Defendant*. | Civil No. 3:16-CV-2059 (JBA)<br><br>August 21, 2017 |

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Sandra Miller ("Plaintiff" or "Ms. Miller") brought this lawsuit alleging breach of an insurance contract (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") (Count 3) against Defendant Allstate Insurance Company ("Defendant" or "Allstate") in connection with Allstate's denial of coverage for a claim to cover the cost of repairing a crumbling house foundation. Defendant moves [Doc. #16] to dismiss all Counts. For the reasons set forth below, Defendant's Motion is GRANTED.

### I. Facts Alleged

Plaintiff alleges that she insured her home through a homeowner's insurance policy issued by Allstate and that she timely made all required premium payments. (Compl. [Doc. # 1] ¶¶ 3-4.) "Over time" Ms. Miller noticed "visible cracking patterns" in her basement walls. (*Id.* ¶ 5.) Becoming worried that her home had the same problems with its concrete foundation that she had seen reported in the news, Ms. Miller engaged a structural engineer to investigate the cracks in mid-November, 2015. (*Id.* ¶ 6.) The engineer determined that the concrete in Plaintiff's basement walls was cracking due to a chemical reaction and that "this chemical reaction will continue to progressively deteriorate the walls, rendering the[m] structurally unstable. . . ." (*Id.* ¶ 7.)

On November 26, 2015, after receiving the engineer's report, Plaintiff made a formal claim with Allstate seeking coverage under her homeowner's insurance policy for the cost of "damages caused by the chemical reaction." (*Id.* ¶ 8.) The engineer subsequently "ordered that the Plaintiff vacate her home due to the structural damage caused by the concrete." (*Id.* ¶ 10.) Plaintiff and her family vacated the house and continue to incur charges to live away from their home. On September 30, 2016 Allstate denied coverage for Ms. Miller's claim.

The insurance policy at issue is a Deluxe Homeowners Policy issued by Allstate. (*See* Ex. C ("Policy") to Mem. Supp. Mot. to Dismiss [Doc. # 16-4].) The Policy provides the following general coverage:

> We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.

(Policy at 37.)[1] The Policy then lists a series of exclusions, several of which are relevant to the instant dispute. The Policy does not cover losses "consisting of or caused by . . . Collapse, except as specifically provided in Section I—Additional Protection under item 11, 'Collapse'." (*Id.* at 38.) Further, the policy does not cover losses "consisting of or caused by . . . wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;" "rust or other corrosion, mold, wet or dry rot;" or "settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings." (*Id.*)

---

[1] There are two sets of page numbers on Exhibit C: the pre-printed page numbers included in the policy, and the page numbers automatically generated by the Court's CM/ECF filing system at the top of the page. Because the pre-printed page numbers start over multiple times and leave some pages blank, they are not useful for finding specific citations. Therefore, the Court will use the page number generated by CM/ECF and listed at the top of the page.

Although the policy generally excludes collapse, it specifies a set of conditions under which collapse would be covered in the "Additional Protection" section:

> **Collapse:**
> We will cover
>     a) the entire collapse of a covered building structure
>     b) the entire collapse of part of a covered building structure; and
>     c) direct physical loss to covered property caused by (a) or (b) above.
>
> For coverage to apply, the collapse of a building structure in (a) or (b) above must be a sudden and accidental physical loss caused by one or more of the following:
>     . . .
>     b) hidden decay of the building structure;
>     . . .
>     f) defective methods or materials used in construction, repair, remodeling or renovation.
> Collapse does not include settling, cracking, shrinking, bulging or expansion.

(*Id.* at 46.) The Policy's definitions section does not define "sudden," "direct physical loss," or "collapse," although the Additional Protection requires that collapse be "entire" to trigger coverage.

## II. Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

3

"[A] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Id.* (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam). The Plaintiff's policy is obviously such a document.

### A. Count One: Breach of Contract

In Connecticut, "the terms of an insurance policy are to be construed according to the general rules of contract construction. The determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy." *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795–96 (2009) (internal citations and alterations omitted). Where the language of an insurance policy is clear, the words are to be ascribed their ordinary meaning. However, when an insurance contract is ambiguous, "that [interpretation] which will sustain the claim and cover the loss must, in preference, be adopted. This rule of construction favorable to the insured extends to exclusion clauses." *Id.*

Plaintiff alleges breach of contract on the ground that she paid the premium for her Policy but was denied coverage for a claim that fell within its terms.[2] Defendant moves [Doc. # 16] to

---

[2] In order to state a claim for breach of contract in Connecticut, a plaintiff must allege: "(1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the opposing party; (4) direct and proximate cause; and (5) damages." *McMann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–04 (2006). The Complaint sufficiently alleges formation of an agreement and that Ms. Miller paid her premium.

dismiss this claim, arguing that there was no coverage because (i) the Policy only covers "sudden and accidental" losses, but Plaintiff alleges a slow process of deterioration, (ii) the Policy explicitly excludes cracking walls and losses caused by faulty materials and (iii) the limited coverage for collapse applies only to an "entire collapse" that is "sudden and accidental" and does not include "settling, cracking, shrinking, bulging, or expansion." (Mem. Supp. Mot. to Dismiss [Doc. # 16-1] at 2.)

1. **Coverage for Sudden and Accidental Losses**

Defendant first argues that the Policy only covers "sudden and accidental direct physical loss," (Policy at 37) but that the loss described by Plaintiff was a "progressive deterioration of . . . concrete" that has occurred "over time." (Compl. ¶¶ 5, 7, 12.) In *Buell Industries, Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, the Connecticut Supreme Court rejected a plaintiff's contention that the word "sudden" in a "sudden and accidental" exception meant only "unexpected" without any temporal connotation and consequently rejected the plaintiff's argument that an insurance policy should cover an unexpected loss that occurred over a period of years. The Connecticut Supreme Court concluded that "the term 'sudden,' as used in the policies, includes a temporal quality, which requires that the onset of the release in question occurs quickly or happens abruptly." *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 536 (2002).

Interpreting identical policy language and a similar set of factual allegations, Judge Vanessa L. Bryant recently granted summary judgment to Allstate, reasoning that

> [b]ecause the parties do not dispute that [plaintiffs'] basement walls deteriorated over time, rather than 'suddenly,' and that the effects of the condition which has compromised the structure was observable to the homeowners many years before

5

the basement walls were opined to be substantially impaired, the Allstate Policy excludes coverage for their loss irrespective of the definition of the term collapse.

*Metsack v. Liberty Mut. Fire Ins. Co. et al.*, No. 14-cv-1150, 2017 WL 706599 (D. Conn. Feb. 31, 2017). Here, the allegations do not specify that Plaintiff saw the cracks years before filing a claim, but only state that Plaintiff became aware "over time" of the cracks in her concrete. However, the complaint also alleges that the process was not complete as of November, 2015. Rather, at that time, Plaintiff's engineer reported that "this chemical reaction will continue to progressively deteriorate the basement walls, rendering the structure unstable. . . ." (Compl. ¶ 7.) These allegations do not allege any sudden, abrupt, or quick change in the concrete.

In her Opposition, Plaintiff recharacterizes the allegations in the Complaint, claiming that the "sudden and accidental physical loss" is the "chemical reaction" that causes the cracking: "The cracking, as well as the 'collapse' aspect of Plaintiff's complaint are an ostentatious manifestation of this chemical reaction, whether the reaction is occurring and is not visible, or if the concrete has crumbled resulting in the entire structure imploding, really has nothing to do with the physical loss that is already occurring." (Opp'n [Doc. # 20] at 5.)

However, even if the claimed loss is the chemical reaction, and not the cracking or crumbling, Plaintiff's Complaint describes the process as proceeding over time. Plaintiff's engineer explained that "this chemical reaction will continue to progressively deteriorate the basement walls, rendering the structure unstable." Far from alleging an abrupt or quick change in the walls and foundation, the Complaint alleges a progressive deterioration. Without any plausible allegation of suddenness, and with allegations that explicitly contradict the possibility that the deterioration occurred suddenly, Plaintiff's claim is not plausibly covered by the plain language of the policy.

### 2. Loss Consisting of Cracking, not Chemical Reactions

Bracketing the question of whether a loss must be "sudden" for coverage to apply, Defendant argues in the alternative that even if coverage extended to progressive deterioration, Plaintiff's claimed loss would be excluded because it consists of cracking and crumbling of the house's foundation and the Policy explicitly excludes coverage for losses "consisting of" or "caused by" "settling, cracking, shrinking, bulging or expansion of . . . foundations, walls, floors, roofs or ceilings." (Policy at 38.)

Plaintiff responds that the cracks are merely an effect, whereas the loss consists of the chemical reaction that causes the concrete to form cracks, implying that the loss occurs regardless of whether cracks become visible or the concrete actually crumbles: "whether the reaction is occurring [but] is not visible, or if the concrete has crumbled resulting in the entire structure imploding, really has nothing to do with the physical loss that is already occurring." (Opp'n. at 6.)

The Policy takes account of the distinction Plaintiff draws, providing coverage for collapse due to "hidden decay," but not "hidden decay" by itself.

### 3. Additional Coverage for Collapse

Defendant next argues that the additional collapse coverage does not apply because that additional coverage is only triggered by a collapse that is "sudden and accidental" (Policy at 46) and because however the term collapse is defined, the Policy specifically excludes "cracking, shrinking, bulging or expansion" from its definition. (Mem. Supp. Mot. to Dismiss at 10.) Plaintiff counters that *Dalton v. Harleysville Worcester Mutual*, 557 F. 3d 88, 93 (2d Cir. 2009) shows that the term "collapse" is ambiguous between a sudden occurrence and a slow process where a policy defines collapse as caused by "hidden decay."

*Harleysville* addressed the slightly different question of whether, as a matter of New York law, collapse must be sudden when a policy does not place any temporal restrictions on the definition of collapse. Here, by contrast, the Policy specifies that collapses caused by "hidden decay" are covered, but only if they are sudden and accidental. Allstate has chosen to limit coverage by requiring that collapse be 'sudden and accidental,' and in doing so has effectively foreclosed Plaintiffs' claim at this time.[3]

Despite Plaintiffs' argument, the term "sudden" is not ambiguous and its use does not render the term 'collapse' in the policy ambiguous. Under the terms of the Policy, a process of hidden decay does not trigger coverage until a sudden collapse occurs. The Complaint has not alleged such a collapse. However, there appears to be no means of stopping the chemical reaction that causes the foundation to deteriorate and, as alleged, some portion of the house may eventually collapse, at which time Plaintiffs may seek coverage.

### III. Breach of Covenants of Good Faith and Fair Dealing and Violation of CUTPA/CUIPA

Count Two of the Complaint alleges a violation of the implied covenant of good faith and fair dealing in connection with Defendant's refusal to provide coverage under the Policy, and Count Three alleges violations of CUTPA and CUIPA in connection with Allstate's collusion with

---

[3] Allstate's approach of narrowing the kinds of collapses covered to only those that occur suddenly does not give recognition to the reasoning in *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252 (1987), which relied on the doctrine of avoiding economic waste to justify an expansive definition of collapse. In addition, *Beach* leaves open how or whether an insurer may raise the common law duty to mitigate damages as a defense when it reasoned that "requiring the insured to await an actual collapse would not only be economically wasteful; but would also conflict with the insured's contractual and common law duty to mitigate damages." *Id.* at 252 n.2. If Allstate were to raise such a defense after the eventual and inevitable collapse of the Clough's house, it may render the Policy's promise to provide coverage for sudden collapse illusory.

8

other insurers to unfairly deny coverage to Plaintiff. Defendant argues that these counts should be dismissed because, under Connecticut Supreme Court precedent, "bad faith is not actionable apart from a wrongful denial of a benefit under the policy." *Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 798 (2013). Similarly, the Connecticut Supreme Court has held that where an insurer's interpretation of a policy's coverage limitation is correct, "there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation" of CUTPA/CUIPA. *Zulick v. Patrons Mut. Ins. Co.*, 287 Conn. 367, 378 (2008).

Plaintiff does not respond directly to this argument, claiming only that she has sufficiently alleged breach of contract and that, proceeding on that assumption, the bad faith and statutory CUTPA/CUIPA claims are also adequately pleaded. However, under *Capstone* and *Zulick*, since the Court concluded that Count One must be dismissed because the Policy does not cover the claimed loss, it must dismiss Counts Two and Three as well.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is granted. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/
_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24 day of August 2017.